UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
*Electronically Filed*

POWERCOIN, LLC

               Plaintiff,                    Case No.:   5:22-cv-62-BJB

v.

McCRACKEN COUNTY SHERIFF'S DEPARTMENT
        McCracken County Courthouse
        300 Clarence Gains Street
        Paducah, KY 42001

SHERIFF MATT CARTER
        McCracken County Courthouse
        300 Clarence Gains Street
        Paducah, KY 42001

DETECTIVE KYLE SERATT
        McCracken County Courthouse
        300 Clarence Gains Street
        Paducah, KY 42001

COMMONWEALTH ATTORNEY DAN BOAZ
        c/o Attorney General Daniel Cameron
        700 Capital Avenue, Ste. 118
        Frankfort, KY 40601

KAYLEE TRAMMELL
        302 Banberry Bend
        Paducah, KY 42003

        Defendants.

---

## COMPLAINT

---

**COMES NOW** the Plaintiff, PowerCoin, LLC, and sues the Defendants, McCracken County

Sheriff's Department, Sheriff Matt Carter, Detective Kyle Seratt, and McCracken County

Commonwealth Attorney, Dan Boaz (collectively "Defendants"), and for its cause of action would show unto the Court as follows:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Kentucky.

2.      The Court has jurisdiction of this action under 42 U.S.C. § 1983, U.S.C. §1343, and 28 U.S.C. § 1331.

3.      Plaintiff further invokes the supplemental jurisdiction of this Court to adjudicate the pendent state law claims arising from the same controversy pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

## PARTIES

5.      Plaintiff, PowerCoin, LLC (hereafter "Plaintiff" or "PowerCoin"), is a Pennsylvania corporation with its principal office at 415 N. Prince Street, Lancaster, PA 17603, which was authorized to do and doing business in the Commonwealth of Kentucky at all times herein.

6.      Defendant, McCracken County Sheriff's Department (hereafter "Defendant Sheriff's Department"), is and was at all times herein created under the authority of the laws of this Commonwealth and existing therein for the general purpose of law enforcement in McCracken County

7.      At all times herein, Defendant, Sheriff Matt Carter (hereafter "Defendant Carter") was Sheriff of the McCracken County Sheriff's Department and as such, he was the commanding officer of Defendant, Kyle Seratt, and was responsible for the training, supervision and conduct of Defendant Kyle Seratt.  Defendant Carter was responsible by law for enforcing the regulations of

McCracken County, Kentucky and for ensuring that McCracken County Sheriff's Department officers obey and enforce the laws of the Commonwealth and the United States. Defendant Carter is sued both in his official and individual capacities.

8.    At all times herein, Detective Kyle Seratt (hereafter "Defendant Seratt") was a deputy employed by the McCracken County Sheriff's Department, as a detective. Defendant Seratt is sued both in his official and individual capacities.

9.    At all times herein, Defendant, Commonwealth Attorney Dan Boaz (hereafter "Defendant Boaz") was the Commonwealth Attorney of McCracken County, Kentucky, and, as such, was the prosecutor of felony crimes in McCracken County, Kentucky. Defendant Boaz is sued in his individual capacity only.

10.    At all times herein, Defendant Kaylee Trammell (hereafter "Defendant Trammell") was a resident citizen of McCracken County, Kentucky.

11.    At all times referred to, the Defendant Carter and Defendant Seratt acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Kentucky and of McCracken County, Kentucky. They were employees of the McCracken County Sheriff's Department acting upon or in furtherance of the business of their employer and within the scope of their employment. Consequently, the McCracken County Sheriff's Department is liable under the doctrine of respondeat superior for all tortuous action herein set out.

## FACTS

12.    PowerCoin is in the business of selling Bitcoin at retail kiosks throughout the United States. Bitcoin is virtual currency without a physical counterpart such as banknotes or coins. The currency exists only in electronic form. Bitcoin operations use blockchain technology to generate decentralized, transparent, financial transactions.

13.    The retail kiosks look like traditional ATM's and are branded "BitStop" by PowerCoin.  The BitStop machines are lawful and are governed and regulated by the same federal law that governs ATM machines.  In fact, PowerCoin contracts with Loomis, an armored car service, to service its BitStop machines, just as many banks do for their ATM's.

14.    Customers that want to purchase Bitcoin at a BitStop machine establish an online account or "wallet" into which the Bitcoin can be deposited.  The Customer simply puts fiat currency into the BitStop machine, selects how much Bitcoin he/she wants to purchase and then causes the Bitcoin to be transferred into the customers online wallet.

15.    When purchasing Bitcoin, the BitStop machine includes a fraud/scam warning screen which specifically advises the customer that he/she should only transfer Bitcoin into their own wallet.  The customer must acknowledge that they have read and understand the warning before proceeding with the transaction.

16.    PowerCoin actually buys Bitcoin, and transfers it into the customer's online wallet through the BitStop machines.  PowerCoin then uses the fiat currency deposited into the BitStop machine by the customer to pay for the Bitcoin it purchased on the open market and sold to the customer.

17.    On or about September 9, 2021, Defendant Trammell was the victim of a scam. Upon information and belief, she was contacted by an unknown person and convinced that she had an outstanding federal arrest warrant due to some improprieties involving the use of her social security number.  Upon information and belief, Defendant Trammell was told that she could nullify the warrant by paying $15,000, and she was instructed to go to her bank and withdraw that amount of fiat currency.  Upon information and belief, Defendant Trammell did so and withdrew $15,000 in United States currency from her bank at the direction of the caller.

18.    On or about that same date, upon information and belief, Defendant Trammell was further instructed to go to the Huck's convenience store at 3570 Lone Oak Road in McCracken County, Kentucky, and to use her U.S. currency to buy Bitcoin from the BitStop machine at the Huck's store, and to transfer $5,000 worth of Bitcoin into three (3) different wallets or accounts, for a total transfer of $15,000.  In order to do this, Defendant Trammell had to create two fake profiles and use 3 distinct wallet addresses to complete this volume of transaction.  PowerCoin has controls in place to prevent one wallet from being associated to more than one customer. The transactions were designed to circumvent controls in place to prevent customers from sending this much money in a single transaction without a compliance review.

19.    PowerCoin owned and/or operated the BitStop machine at 3570 Lone Oak Road.

20.    Upon information and belief, Defendant Trammell inserted $14,800 in U.S. currency into the BitStop machine, which was all that the BitStop machine would accept, and purchased an equal amount of Bitcoin, as instructed by the caller.

21.    In exchange for $14,800 in U.S. currency deposited by Defendant Trammell, PowerCoin, through its BitStop machine, transferred an amount of Bitcoin equal to the $14,800 in U.S. currency into Ms. Trammell's online wallets.  PowerCoin was the lawful owner of the Bitcoin it transferred and gave fair value in Bitcoin in exchange for the $14,800 in U.S. currency.

22.    The transfer of Bitcoin from PowerCoin, through the BitStop machine, into Defendant Trammell's online wallet or account was a lawful, fair, arm's length exchange for value.

23.    The transfer of Bitcoin from PowerCoin, through the BitStop machine, into Defendant Trammell's online wallets created an obligation on behalf of PowerCoin to pay for the Bitcoin it transferred to Defendant Trammell, and  PowerCoin intended to use the $14,800 in U.S. currency deposited by Defendant Trammell to pay for the Bitcoin it transferred or for replacement

Bitcoin to be held in inventory by PowerCoin.

24    Upon information and belief, the unknown caller then instructed Defendant Trammell to transfer the Bitcoin she had just purchased in exchange for $14,800 in U.S. currency, and lawfully owned, into three (3) online wallets presumably held by the caller.

25.    Upon information and belief, Defendant Trammell did so and transferred the Bitcoin she had purchased for $14,800.00 into three (3) online wallets held by the caller.  When she did so, Defendant Trammell transferred Bitcoin that she owned to the wallets or accounts of the caller, even though the BitStop machine required Defendant Trammell to acknowledge that she owned all of the wallets into which Bitcoin was transferred during the transaction flow.

26.    Upon information and belief, Defendant Trammell did not have an outstanding federal warrant for her arrest and there were no improprieties concerning the use of her social security number.

27.    Upon information and belief, Defendant Trammell was the victim of a scam.

28.    PowerCoin had no role in, and nothing whatsoever to do with, the call to Defendant Trammell or the scam.  At all times, PowerCoin was an innocent third-party that transferred fair value in Bitcoin to Defendant Trammell in exchange for her deposit of $14,800 in U.S. currency.

29.    Sometime thereafter, Defendant Trammell presumably realized that she had been scammed and contacted Defendant Sheriff's Department to report the scam.

30.    Defendant Sheriff's Department, Defendant Carter, and/or Defendant Seratt responded and began an investigation of Defendant's Trammell's complaint, assigning it case number 21-021567.  Eventually, Defendant Sheriff's Department, Defendant Carter, and/or Defendant Seratt determined that that Defendant Trammell had been the victim of a scam.

31.    In the course of its investigation, Defendant Sheriff's Department, Defendant Carter,

and/or Defendant Seratt contacted PowerCoin to advise PowerCoin of the scam.

32.     At all times, PowerCoin explained that it had transferred an amount of Bitcoin equal to the $14,800 in U.S. currency it received from Defendant Trammell and that it, PowerCoin, was the rightful owner of the $14,800 in U.S. currency exchanged by Defendant Trammell.

33.     At all times, Defendant Sheriff's Department, Defendant Carter, and Defendant Seratt knew, or should have known, that PowerCoin was the rightful owner of the $14,800 in U.S. currency and that PowerCoin had exchanged fair value in Bitcoin in exchange for the $14,800 in U.S. currency.

34.     On or about September 10, 2021, Defendant Seratt swore out an Affidavit for Search Warrant seeking judicial authority to seize PowerCoin's property as follows:

> For representatives of Loomis Armored US, to whom services are contracted by Powercoin, LLC, to access and enter the Bitstop ATM located within Hucks, 3570 Lone Oak Road, Paducah, Kentucky, owned by Powercoin, LLC and contracted to Loomis Armored US, for the specific removal of $14,800 U.S. currency and to relinquish possession and control of said $14,800 to the McCracken County Sheriff's Department as evidence in case 21-021567.

35.     In the Affidavit for Search Warrant, Defendant Seratt further swore regarding the $14,800 in U.S. currency that "there is probable and reasonable cause to believe and affiant does believe that said property constitutes … stolen or embezzled property."

36.     Defendant Seratt knew that the $14,800 in U.S. currency in the BitStop machine was not "stolen" property, or acted with reckless disregard for the truth.  Alternatively, the only way that Defendant Seratt could have believed that the $14,800 in currency in the BitStop machine was "stolen" property was if Defendant Trammell had misled him about the transaction.

37.     In the Affidavit for Search Warrant, Defendant Seratt further swore that "[t]hrough training and experience, this detective is aware of multiple scams in which suspects prey on the fears of citizens in efforts to obtain money from the victim by deceit (sic)."  Defendant Seratt was aware

that PowerCoin was an innocent third-party and that the digital currency (i.e. Bitcoin) transferred by Trammell to the scammers could not be tracked or recovered, stating under oath in his Affidavit in support of the Search Warrant as follows:

> Suspects typically instruct victims to make payment via pre-paid credit cards or crypto currency transfers. Once the monies have been digitally transferred, there is little opportunity to track and or recover the monies, no (sic) to identify the suspects committing the offenses.

38.    Defendant Seratt's Affidavit for Search Warrant was approved and a Search Warrant was signed and issued by McCracken Circuit Judge William Kitchen on September 10, 2021, as requested by Defendant Seratt.

39.    Upon information and belief, on or about September 13, 2021, the Search Warrant was executed by Defendant Seratt, and/or Defendant Carter, and/or Defendant Sheriff's Department, and one hundred forty-eight (148) $100 bills, totaling $14,800 in U.S. currency, was seized from PowerCoin's BitStop machine.

40.    Even though Defendant Seratt was aware that PowerCoin had transferred fair value in Bitcoin equal to the $14,800 in U.S. currency to Defendant Trammell, and had sworn in his Affidavit that Defendant Trammell had given her Bitcoin away to the scammer and it would not be recovered, Defendant Seratt sought advice on whether to return PowerCoin's $14,800 to Defendant Trammell.

41.    On or about October 21, 2021, Assistant Commonwealth Attorney James C. Mills, Esq., acting on behalf of, and with the specific authority, permission, and direction of Defendant Boaz, advised Defendant Seratt that he could give PowerCoin's $14,800, which had been improperly seized via the execution of the search warrant, to Defendant Trammell, even though he was aware that the perpetrators would never be discovered and/or prosecuted.

42.    At the time that Defendant Boaz, through his Assistant Commonwealth Attorney,

advised Defendant Seratt that he could give PowerCoin's currency to Defendant Trammell, instead of to its owner, PowerCoin, there was no prosecution or judicial phase of Defendant Sheriff's Department case number 21-021567 underway or even contemplated.  In fact, when Defendant Boaz, through his Assistant, gave advice to Defendant Seratt that he could give PowerCoin's U.S. currency to Defendant Trammell, he specifically noted that "[i]t is highly unlikely that the seized funds would be used in a prosecution as the perpetrators have not been identified and if they were to be identified would not likely be extradited."

43.    As Defendant Boaz plainly acknowledged  that no suspect would ever be charged in connection with case number 21-021567 due to the nature of Bitcoin,  Defendant Boaz was not exercising protected prosecutorial discretion in authorizing the transfer of PowerCoin's $14,800 to Defendant Trammell.

44.    Defendant Boaz, and/or his Assistant, James Mills,  knew that the $14,800 in U.S. currency in the BitStop machine was not "stolen" property, and lawfully belonged to PowerCoin, or acted with reckless disregard for the truth.

45.    By transferring $14,800 lawfully owned by and improperly seized from PowerCoin, to Defendant Trammell, Defendant Sheriff's Department, Defendant Carter, Defendant Seratt, and Defendant Boaz took PowerCoin's property without due process of law in violation of rights secured it by the United States Constitution, the Constitution of the Commonwealth of Kentucky, and the laws of the Commonwealth of Kentucky, and gave it to Defendant Trammell.

46.    Kentucky law compelled Defendant Sheriff's Department, Defendant Carter, Defendant Seratt, and Defendant Boaz to assist PowerCoin in the defense of its private property interests, not assist Defendant Trammell in being made whole at the expense of taking PowerCoin's property, or at the very least to preserve the status quo until questions of the status of property ownership/rights were established by due process of law.

47.     Thereafter, PowerCoin, through counsel, contacted Defendant Seratt and Defendant Boaz, and demanded the return of its $14,800 in U.S. currency.  In connection therewith, PowerCoin once again explained that PowerCoin had transferred fair value in Bitcoin equal to the $14,800 in U.S. currency to Defendant Trammell and Defendant Trammell had given her Bitcoin away to the scammer, and that PowerCoin was, therefore, the lawful and rightful owner of the $14,800 in U.S. currency seized from the BitStop machine.

48.     Upon information and belief, Defendant Seratt and/or Defendant Boaz, and/or Defendant Carter and/or Defendant Sheriff's Department, recognizing that it had, in fact, given Defendant Trammell property that lawfully belonged to PowerCoin, contacted Defendant Trammell and demanded the return of the $14,800 in U.S. currency that belonged to PowerCoin, explaining that it had been wrongfully turned over to her by Defendant Seratt, so that it could be restored to PowerCoin, its lawful and proper owner.

49.     Upon information and belief, Defendant Trammell refused to return to Defendant Seratt and/or Defendant Boaz, and/or Defendant Carter and/or Defendant Sheriff's Department the $14,800 in U.S. currency wrongfully transferred to her, even though Defendant Trammell knew or should have known that PowerCoin is the right and just owner of the currency and it was wrongfully seized from PowerCoin and wrongfully returned to Defendant Trammell.

50.     Even though she knew, or should have known, that she was wrongfully in possession of $14,800 in U.S. currency lawfully owned by PowerCoin, Defendant Trammell refused to return the currency so that it could be restored to PowerCoin.

51.     Despite the clear error and wrongful conduct as described herein, Defendant Sheriff's Department, Defendant Carter, Defendant Seratt, and Defendant Boaz have also failed and refused to restore PowerCoin's $14,800 in U.S. currency, requiring instead that PowerCoin pursue the instant

litigation, to PowerCoin's further detriment and damage.

## CLAIMS

### COUNT I - 42 U.S.C. § 1983:  VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

52.      Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

53.      Defendant Sheriff's Department, Defendant Carter, Defendant Seratt, and Defendant Boaz, under the color and threat of law, effected a taking of PowerCoin's personal property for private use in violation of Plaintiff'' rights under the Fifth Amendment to the United States Constitution, as secured to it by the Fourteenth Amendment.

54.      As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, PowerCoin has been damaged in an amount to be determined at trial.

### COUNT II - 42 U.S.C. § 1983: VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHTS

55.      Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

56.      Defendant Sheriff's Department, Defendant Carter, Defendant Seratt, and Defendant Boaz's conduct was outrageous, unreasonable, arbitrary, and capricious, and has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.

57.      There is no viable justification, public purpose, or public rationale for the appropriation of Plaintiff's' private property to be given to other private parties, overseen by and sanctioned by Defendant Sheriff's Department, Defendant Carter, Defendant Seratt, and Defendant Boaz.

58.     As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, PowerCoin has been damaged in an amount to be determined at trial.

**COUNT III – 42 U.S.C. § 1983:  VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS RIGHTS**

59.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

60.     PowerCoin enjoys a plethora of legal rights under the United States Constitution relative to this action, including but not limited to the right to the quiet enjoyment and use of its property, the right to not have that property unlawfully taken from it, the right to notice and a hearing before these rights are infringed, and the right to rely on law enforcement and government officials to maintain public order by assisting it in enforcing its private property rights, and others.

61.     All of these rights were abrogated, infringed, denied, and invaded Defendant Sheriff's Department, Defendant Carter, Defendant Seratt, and Defendant Boaz herein.

62.     Defendants acted according to an established procedure, the arbitrary and capricious invasion of private property under the pretense of a search warrant, that itself violates due process rights, or in the alternative theirs was a "random and unauthorized act" causing a loss to PowerCoin for which available state remedies would not adequately compensate Plaintiff.

63.     As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff has been damaged in an amount to be determined at trial.

**COUNT IV – 42 U.S.C. § 1983:  VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS**

64.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

65.     PowerCoin has the right to be free from unreasonable searches and seizures.

66.     Defendant Seratt knew that the $14,800 in U.S. currency in the BitStop machine was not "stolen" property and belonged to PowerCoin, or acted with reckless disregard for the truth, and the Search Warrant, which relied upon this erroneous assertion was, therefore, unreasonable.

67.     Defendant Boaz, and those acting under him, knew that the $14,800 in U.S. currency in the BitStop machine which was seized pursuant to the Search Warrant was not "stolen" property and belonged to PowerCoin, or acted with reckless disregard for the truth, and his advice to Defendant Seratt that he could return the $14,800 in U.S. currency to Defendant Trammell, who was not the rightful owner, was an unreasonable seizure, taking, and was not the exercise of prosecutorial discretion.

68.     As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff has been damaged in an amount to be determined at trial.

### COUNT V – 42 U.S.C. § 1983:  FAILURE TO TRAIN

69.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

70.     Defendant Carter was at all relevant times, the Sheriff of the McCracken County Sheriff's Department, a supervisor with oversight responsibility for Defendant Seratt.  Defendant Carter was also responsible for the training, supervision, instruction, and discipline of Defendant Seratt, who conducted an unlawful and improper search and seizure of PowerCoin's property based upon an unreasonable Search Warrant obtained by an unlawful, unreasonable and patently false Affidavit.

71.     Defendant Carter knew, or, in the exercise of due diligence, should have known that Defendant Seratt would be called upon to investigate scams, including scams using cryptocurrency. In fact, Defendant Seratt alleged in his Affidavit in support of the Search Warrant that he had been

trained in scams involving cryptocurrency.  It was, therefore, the responsibility of Defendant Carter to understand how cryptocurrency transactions worked so that he could adequately train Defendant Sheriff's Department deputies, including Defendant Seratt, in the proper execution of his law enforcement duties as they related to cryptocurrency.

72.    It was further the responsibility of Defendant Carter and Defendant Sheriff's Department to train its deputies, including Defendant Seratt, to understand who the lawful owner is of property seized under color of law.

73.    Defendant Carter and Defendant Sheriff's Department failed to adequately train Defendant Seratt, and to take such other preventative and remedial measures as were necessary, to guard against the injustices committed by Defendant Seratt.  If Defendant Carter and Defendant Sheriff's Department would have properly trained Defendant Seratt and taken such remedial action, the injuries to the Plaintiff would not have occurred.

74.    Acting under color of law and pursuant to official policy, practice, custom, or lack thereof Defendant Sheriff's Department and Defendant Carter intentionally, knowingly, and recklessly failed to instruct, train, supervise, and control Defendant Seratt in his duties to refrain from unlawfully and unreasonably searching and seizing property which amounted to a deliberate indifference to the constitutionally protected rights of the Plaintiff.

75.    Acting under the color of law and pursuant to official policy, practice, custom, or lack thereof, the Defendant Carter and Defendant Sheriff's Department intentionally, knowingly, and recklessly failed to instruct, train, and supervise Defendant Seratt on a continuing basis in the correct procedure for investigating cryptocurrency scams and properly investigating such cases.

76.    As a direct and proximate result of the acts of Defendant Carter and Defendant Sheriff's Department, as set forth herein, Plaintiff suffered monetary damages in connection with the

deprivation of its constitutional rights guaranteed by the various provisions of the Constitution of the United States and protected by 42 U.S.C. Section 1983.

**COUNT VI - CONVERSION**

77.      Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

78.      PowerCoin had legal title to the $14,800 in U.S. currency.

79.      PowerCoin had possession of the $14,800 in U.S. currency, and/or the right to possess it, at the time of the conversion.

80.      Defendant Sheriff's Department, Defendant Carter, Defendant Seratt, and Defendant Trammell exercised dominion over the $14,800 in U.S. currency in a manner which denied PowerCoin of its right to use and enjoy the property and which was to the Defendants' own use and beneficial enjoyment.

81.      Defendants intended to interfere with PowerCoin's possession.

82.      PowerCoin made demand for the return of the $14,800 in U.S. currency which Defendants refused.

83.      Defendants' acts and action were the legal cause of PowerCoin's loss of the $14,800 in U.S. currency.

84.      PowerCoin suffered damage by the loss of the $14,800 in U.S. currency.

**COUNT VII – IMPROPER INTERFERENCE WITH CONTRACTUAL RELATIONS**

85.      Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

86.      PowerCoin was party to one or more contractual agreements with third-party vendors from whom it bought cryptocurrency for resale in its BitStop machines.  PowerCoin utilized money

deposited by customers in order to pay for the cryptocurrency transferred to its customers via the BitStop machine.

87.     Defendants knew, or reasonably should have known, that PowerCoin was party to such a contract and used and/or needed the money deposited into the BitStop machine to pay its vendors for the cryptocurrency it obtained and transferred into the customer's wallet or account.

88.     By seizing the $14,800 in U.S. currency, and failing and refusing to return it, Defendants intended to prevent PowerCoin from using the $14,800 it lawfully possessed to pay for the Bitcoin it transferred to Defendant Trammell as required by its agreement with its vendor.

89.     Defendants were unable to use the $14,800 it lawfully possessed to pay for the Bitcoin it transferred to Defendant Trammel and had to use other funds to pay for the Bitcoin.

90.     PowerCoin suffered damages as a result in that it lost the use of the $14,800 to which it was justly entitled.

91.     Defendants had no privilege or justification for its conduct.

## COUNT VIII – PUNITIVE DAMAGES

92.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein

93.     As a result of the intentional, reckless, and wanton actions herein alleged, Defendants should be ordered to pay punitive damages in a fair and just amount to Plaintiff.

## COUNT IX – ATTORNEY'S FEES

94.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

95.     As a result of the Defendants' violations of Plaintiff's constitutional rights and 42 U.S.C. § 1983, as more specifically described herein, and the enforcement of Plaintiff's rights under same, Plaintiff is entitled to recover its attorney fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE, PLAINTIFF, POWERCOIN, LLC, PRAYS:**

1.     Judgment against all Defendants herein, jointly and severally, for damages, including punitive damages, in any amount to be proven by the evidence;

2.     Judgment for its costs and attorney's fees incurred herein;

3.     A trial by jury on all claims so triable;

4.     Any and all other relief to which it may appear entitled under the circumstances.

Respectfully submitted,

**KATZ LAW**

_____/s/_____Brian S. Katz_____
BRIAN S. KATZ, ESQ.
2226 Broadway, Suite 1
P.O. Box 2903
Paducah, KY  42002-2903
(270) 575-3939
Email: brian@brianskatz.com
ATTORNEY FOR PLAINTIFF